UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PENNY CASE,

                Plaintiff,

                v.

ONONDAGA COUNTY et al.,

                Defendants.
_____

5:14-cv-272
(GLS/DEP)

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of James D. Hartt      JAMES D. HARTT, ESQ.
70 Linden Oaks
3rd Floor
Rochester, NY 14625

**FOR THE DEFENDANTS:**
Onondaga County Department of Law      CAROL L. RHINEHART, ESQ.
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, NY 13202

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Penny Case commenced this action against defendants Onondaga County and Van Duyn Home and Hospital alleging disparate

treatment based on her sex, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964.[1]  (Compl., Dkt. No. 1.) Pending before the court is defendants' motion for summary judgment. (Dkt. No. 16.)  For the reasons that follow, the motion is granted.

## II. Background[2]

Since 1995, Case, a female, was employed in various titles at Van Duyn Home and Hospital, a health care facility then owned and operated by Onondaga County.  (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 3-4, 80-81, Dkt. No. 16, Attach. 37.)  Case's final position at Van Duyn was "Maintenance Worker I" where she was supervised by Justin Joyce.  (*Id.* ¶¶ 7, 23.)  She was the only female who worked in the maintenance department.  (*Id.* ¶ 2.)  Case's job duties, among others, included hanging pictures, changing ceiling tiles, cutting keys, and running errands.  (*Id.* ¶ 10.)  Work was distributed through a work order program where Van Duyn employees would make repair requests and Joyce would then assign maintenance workers a particular work order to complete.  (*Id.* ¶¶ 24-25.) Maintenance workers were generally expected to work independently.  (*Id.*

---

[1] *See* 42 U.S.C. §§ 2000e-2000e-17.

[2] Unless otherwise noted, the facts are not in dispute.

2

¶¶ 25-26.)

In 2006 and 2007, Case was charged with and disciplined for poor performance and behavior on three separate occasions. (*Id.* ¶¶ 15-22.) After the third charge, the County sought to terminate Case, but she challenged the charges under her collective bargaining agreement, which the arbitrator affirmed and instead imposed a fifteen-day suspension. (*Id.* ¶ 21.) The arbitrator advised Case that any subsequent misconduct would be punished more severely. (*Id.* ¶ 22.)

In August 2011, Case was assigned to train Gerald Morse, a new male employee to the maintenance department who had previously worked in the housekeeping department. (*Id.* ¶¶ 28-29.) Case reported to Joyce that Morse "need[ed] to go back, because he [was] not capable of doing the work." (*Id.* ¶ 30.) However, once trained, Joyce assigned work orders to Morse individually. (*Id.*) Nevertheless, Case continued to inspect Morse's work and told him how to complete work orders. (*Id.* ¶ 31.) The parties dispute the manner and tone that Case used with Morse. (*Id.* ¶ 32; Pl.'s Statement of Material Facts (SMF) ¶ 9, Dkt. No. 19.) Joyce reprimanded Case several times for her continued oversight of Morse. (Defs.' SMF ¶ 33.) Even after Case was reprimanded, she continued to

3

critique Morse's performance.  (*Id.* ¶ 34.)

On April 23, 2012, Case failed to complete an assigned work order to repair a curtain track near a resident's bed.  (*Id.* ¶ 46.)  The work was reassigned to Morse.  (*Id.*)  Case acknowledges that she did not complete the work order but asserts that she had a good reason.  (Pl.'s SMF ¶ 18.)  Defendants also cite other examples of Case's failure to complete assigned work orders, all of which Case disputes.  (*Id.* ¶¶ 11-17; Defs.' SMF ¶¶ 35-45.)

The parties dispute the next event.  According to defendants, on April 26, 2012, Case again criticized Morse by screaming at him and calling him an idiot.  (Defs.' SMF ¶ 47.)  She also called his cell phone and sent him text messages criticizing his performance on a particular work order.  (*Id.*)  Joyce directed Case to stop, but instead she became hostile towards him, defied his instructions, and continued to send Morse text messages.  (*Id.* at 48.)  According to Case, it was Morse who had intimidated and harassed her.  (Pl.'s SMF ¶ 19.)

That same day, Joyce met with his supervisor Kim Kohner, the assistant administrator of Van Duyn, and personnel administrator Ann Debejian to discuss Case's ongoing poor behavior.  (Defs.' SMF ¶ 49.)

4

After the meeting, Kohner and Debejian reviewed Case's disciplinary history and decided to initiate formal disciplinary charges recommending her termination. (*Id.* ¶¶ 50-51.) Joyce was instructed to gather statements from Case's coworkers to support the disciplinary charges. (*Id.* ¶ 52.)

The next day, on April 27, 2012, Joyce learned that Case was in a prohibited area and instructed her to return to her work station.[3] (*Id.* ¶ 58.) In response, Case told Joyce that she wanted to meet with him. (*Id.*) Before meeting with Case, Joyce notified the personnel office and asked how to handle the meeting because he suspected that Case was aware that she was facing disciplinary charges. (*Id.* ¶ 59.) Donna Briscoe, the personnel analyst, told Joyce to attend the meeting, not mention the pending discipline, and to end the meeting if it became contentious. (*Id.* ¶ 60.)

At the meeting, Case came to believe that Morse planned to file harassment charges against her. (*Id.* ¶ 61; Dkt. No. 16, Attach. 8 at 41.) In response, she accused him of sexual harassment, stating "well, I can do

---

[3] Case, relying on her affidavit, denies this fact. (Pl.'s SMF ¶ 23.) However, her affidavit contradicts her earlier deposition testimony and the court will disregard her affidavit on this fact. (*Compare* Pl.'s SMF ¶ 23, *with* Dkt. No. 16, Attach. 8 at 80-81); *see Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (holding a plaintiff cannot rely on factual allegations "made for the first time in [their] affidavit opposing summary judgment," which contradict "prior deposition testimony").

5

that to him, too." (Defs.' SMF ¶ 61; Dkt. No. 16, Attach. 8 at 41.) Joyce immediately reported Case's allegations against Morse to the personnel office. (Defs.' SMF ¶ 62.)

After being encouraged by the personnel office, Case filed a complaint form alleging that Morse would stick his tongue out at her, try to touch her chest, and touch her "butt." (*Id.* ¶¶ 63-67; Dkt. No. 16, Attach. 30 at 2.) Case, however, did not include any dates, times, places, or names of witnesses in her complaint. (Dkt. No. 16, Attach. 30 at 2.) She later testified in her deposition that the sexual harassment occurred on a daily basis for a period of at least three months. (Dkt. No. 16, Attach. 8 at 55-57, 72, 114.)

The County has a policy against discrimination and harassment as well as an anti-retaliation complaint policy. (Defs.' SMF ¶ 53; Dkt. No. 16, Attach. 33.) Case and other County employees received annual training on sexual harassment, discrimination, and retaliation, and Case was aware of the County's policies. (Defs.' SMF ¶¶ 54-56.) She had previously used the policy and filed a harassment complaint against another coworker in 2006. (*Id.* ¶ 57.) Case admits that she did not file a complaint of sexual harassment until she believed that she also faced allegations of

harassment. (*Id.* ¶ 75.)

In response to Case's complaint, Debejian explained to her that the matter would be investigated. (*Id.* ¶ 68.) During the investigation, Case and Morse were assigned to different shifts. (*Id.* ¶ 69.) On May 2, 2012, Bebejian and Joyce met with Morse and his union representative, where Morse denied the charges against him. (*Id.* ¶¶ 70-71.) Debejian explained the County's zero tolerance policy and the associated penalties for sexual harassment which included termination. (*Id.* ¶ 72.) The County could not further investigate Case's complaint because it lacked specificity. (*Id.* ¶ 73.)

On May 4, 2012, Joyce supplied the personnel office with documentation, including statements from coworkers, supporting the disciplinary charges against Case. (*Id.* ¶ 76-77.) Case was then placed on paid administrative leave while the complaints were investigated. (*Id.* ¶ 78.) On May 10, 2012, Case was formally presented with disciplinary charges for employee misconduct. (*Id.* ¶ 79; Dkt. No. 16, Attach. 34.) Rather than challenge the disciplinary charges, Case entered into a settlement agreement with the County and elected to resign. (Defs.' SMF ¶¶ 79, 80.)

After Case resigned, another female Van Duyn employee filed a sexual harassment complaint against Morse. (*Id.* ¶ 83.) Morse was immediately suspended and resigned three days later. (*Id.* ¶ 84.) Case acknowledges that the claimant maintained her employment and was not terminated for filing sexual harassment charges. (*Id.* ¶ 85.)

## III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Hostile Work Environment

Defendants argue that they are entitled to summary judgment on this claim because Case did not subjectively perceive Morse's conduct as abusive and, once notified of Case's complaint, they took appropriate remedial action. (Dkt. No. 16, Attach. 38 at 4-8.) Case contends there is a question of material fact because she asserts that Morse harassed her and defendants failed to intervene. (Dkt. No. 19 at 15-16.)

To establish a hostile work environment claim, "'a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult" that would objectively "be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (internal quotation marks and citations omitted). In order for an employer to be liable for a hostile work environment created by a nonsupervisory coworker, the plaintiff must show "that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015). Under these circumstances, an employer is also liable if it "provided no reasonable avenue for complaint." *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (internal quotation marks and citation omitted).

Here, assuming, without deciding, that Morse's conduct created a hostile work environment, defendants provided a reasonable avenue of complaint and took appropriate remedial action. First, defendants had a policy against sexual harassment, which Case received training on and

9

had previously invoked when she filed a complaint against another employee. (Defs.' SMF ¶¶ 53-57.) Second, the personnel office made diligent efforts to investigate Case's vague allegations. After Case informed Joyce about her complaint against Morse on April 27, 2012, he immediately notified the personnel office. (*Id.* ¶ 61.) That same day, Case was encouraged to file a formal complaint and, once filed, the personnel office explained how it would investigate her claim. (*Id.* ¶¶ 63, 68.) Defendants also separated Case and Morse by assigning them to different shifts during the investigation. (*Id.* ¶ 69.) Then, the personnel office interviewed Morse and informed him of the penalties, however, no further action could be taken because the complaint lacked specificity. (*Id.* ¶¶ 67, 70-72.) Case cannot rely on information that she failed to include in her complaint nor can she point to subsequent action taken against Morse to show that defendants were negligent in their investigation. *See Nolan v. Epifanio*, No. 96 Civ. 2562, 1998 WL 665131, at *4 (S.D.N.Y. Sept. 28, 1998) (evaluating an employer's response to allegations based only on information known by the employer during the investigation). Defendants also cannot be held liable because Case is unsatisfied with how the investigation was handled or its results. *See Davis-Bell v. Columbia Univ.*,

851 F. Supp. 2d 650, 684-85 (S.D.N.Y. 2012) ("Title VII confers on a plaintiff no right to choose the remedy to end the harassment or demand that a workplace dispute be resolved in the way that is most attractive to her.") (internal quotation marks and citation omitted). Accordingly, this claim is dismissed.

## B. Retaliation

Defendants argue that Case cannot show that the disciplinary charges against her were made in retaliation for filing her sexual harassment complaint because the charges were contemplated before she lodged her complaint. (Dkt. No. 16, Attach. 38 at 9-11.) Case maintains that the timing of her disciplinary charges is sufficient to defeat summary judgment. (Dkt. No. 19 at 14.)

Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). When evaluating retaliation claims, courts apply the burden-shifting framework established by *McDonnell Douglas Corporation v. Green*. *See* 411 U.S. 792 (1973);

11

*see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Accordingly, a plaintiff must first show that she engaged in protected activity of which her employer was aware, the employer took adverse action against her, and there is a causal connection between the alleged adverse action and the protected activity. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The burden then shifts to an employer to offer a legitimate, non-retaliatory reason for its action. *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). Once an employer does so, the burden returns to the plaintiff to demonstrate "that the unlawful retaliation would not have occurred 'but-for' the [employer's] alleged wrongful actions." *Id.* at 227.

Here, it is undisputed that Case made her sexual harassment complaint on April 27, 2012 and disciplinary charges were filed against her on May 10, 2012. (Defs.' SMF ¶¶ 61, 68, 79; Dkt. No. 16, Attach. 30; Dkt. No. 16, Attach. 34.) This temporal proximity gives rise to an inference of retaliation satisfying Case's prima facie burden. *See Gorzynski*, 596 F.3d at 110. In response, defendants have supplied a legitimate, non-retaliatory explanation, namely, that disciplinary charges were brought because of Case's history of poor performance and behavior. (Defs.' SMF ¶¶ 50-51.)

Furthermore, the disciplinary charges were contemplated prior to Case's complaint. (*Id.*) To support pretext, Case again relies on the timing between the filing of her complaint and the disciplinary charges. (Dkt. No. 19 at 14-15.) However, temporal proximity alone cannot satisfy Case's burden to raise a material question of fact regarding pretext. *See, e.g., Weber v. City of New York*, 973 F. Supp. 2d 227, 272 (E.D.N.Y. 2013) (noting that even under the more lenient "motivating factor standard" for retaliation claims, "temporal proximity — while enough to support a prima facie case — was insufficient to establish pretext"). Accordingly, Case's retaliation claim is dismissed.

## C. **Employment Discrimination**

Defendants argue that Case's sex discrimination claim is wholly unsupported by the record, they had a legitimate reason to bring disciplinary charges recommending her termination, and Case cannot demonstrate that such action was pretext for discrimination. (Dkt. No. 16, Attach. 38 at 9.) Case asserts that she set forth a prima facie case of discrimination, and defendants' legitimate, non-discriminatory reason for bringing disciplinary charges was pretextual. (Dkt. No. 19. at 13-14.)

It is unlawful for an employer "to discriminate against any individual

13

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To evaluate claims of employment discrimination, "courts apply the burden-shifting rules first set forth in *McDonnell Douglas*, which place upon the plaintiff the initial burden of making out a prima facie case of discrimination." *Hunter v. Cty. of Albany*, 834 F. Supp. 2d 86, 92 (N.D.N.Y. 2011). The plaintiff must demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class." *Id.* (internal quotation marks and citations omitted). "The fourth prong may be satisfied by demonstrating that the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination based on the plaintiff's membership in a protected class." *Id.* (internal quotation marks and citation omitted).

If the plaintiff meets her initial burden, it raises a presumption of unlawful discrimination, which the defendant must counter with a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* (internal quotation marks and citation omitted). The defendant's

14

proffer of such reason will eliminate the presumption of discrimination, "and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Id.* (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). For that reason, "[t]he plaintiff must demonstrate by a preponderance of the evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The plaintiff need not prove "'that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.'" *Id.* (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

Assuming, without deciding, that Case established a prima facie case, defendants have proffered a legitimate, nondiscriminatory reason for the disciplinary charges recommending her termination. Case has a history of employee misconduct for which she received formal discipline. (Defs.' SMF ¶¶ 15-22.) Additionally, throughout 2011 and 2012, she received discipline for her performance and behavior with her coworkers.

(*Id.* ¶¶ 30-31, 33-34, 46.) Specifically, after she finished training Morse, Joyce continually reprimanded her for monitoring and critiquing Morse. (*Id.* ¶¶ 30-31, 33-34.)

In response, Case fails to establish that the disciplinary charges were pretext for discrimination without the benefit of the presumption. Aside from conclusory allegations of sex discrimination, Case relies solely on the fact that she was the only female member of the maintenance department. (Dkt. No. 19 at 13-14.) However, without other affirmative evidence, a jury could not reasonably find on this record that prohibited discrimination was a motivating factor in defendants' employment decision. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) ("[T]he creation of a genuine issue of fact with respect to pretext alone is not sufficient. There must also be evidence that would permit a rational factfinder to infer the discharge was actually motivated, in whole or in part, by discrimination.") Thus, Case's sex discrimination claim is also dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Case's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 16, 2016
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge